Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

LOCAL 3122, COMMUNICATION WORKERS OF AMERICA, AFL–CIO, Defendant-Appellee.

Nos. 82–6116, 83–5177.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1984.

Melvia L. Bailey, Asst. U.S. Atty., Miami, Fla., Dennis A. Paquette, Helene Boetticher, Div. of Labor Management Law, Dept. of Labor, Washington, D.C., William H. Berger, Dept. of Labor, Atlanta, Ga., for plaintiff-appellant.

Manners, Tucker, Carrillo & Damoorgian, P.A., George H. Tucker, Miami, Fla., for defendant-appellee.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge.

CLARK, Circuit Judge:

The plaintiff Secretary of Labor appeals from an order of the District Court for the Southern District of Florida, granting the defendant union's motion to dismiss. We reverse.

This case involves the application of § 402(a) of the Labor Management Report-

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by

designation.

ing and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 482. The statute provides in relevant part:

> (a) A member of a labor organization—
>
> (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
>
> (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of § 481 of this title (governing terms of office and election procedures for national labor organizations).

In this case, four members of Local 3122 challenged an election of officers held in November of 1981. The principal question is whether the dissenters properly exhausted their remedies available under the local bylaws before filing a complaint with the Secretary of Labor.

The bylaws of Local 3122 set forth the following procedures whereby local members may protest elections of local officers: complaining members must first file their protests with the election committee of Local 3122. If the committee denies relief, the members must then protest to the local's executive board. If the executive board provides no remedy, the member must file a third appeal to the membership. With respect to the appeal to the membership, the bylaws state: "A reply to the membership must be received in writing, by U.S. mail by the local secretary-treasurer within ten days from the postmarked date of the executive board's final decision. If appealed, the appeal will be presented at the next regular membership meeting."

Following the November election, the dissenters properly protested to the local election committee; after receiving no remedy, they properly appealed to the local executive board, which likewise rejected their appeal in a letter dated December 22 and mailed during the Christmas mail rush. The third appeal was sent by certified mail on Thursday, December 31, prior to the January 1 deadline, but due to the holidays was not delivered to the local until Monday, January 4. The union rejected the third appeal as untimely, and the protesting members thereafter filed a complaint with the Secretary of Labor. The Secretary of Labor, finding probable cause to believe that the union had failed to conduct its election in accordance with its constitution and bylaws, filed an action in April, 1982, in the District Court for the Southern District of Florida. The district court granted the local's motion to dismiss on the grounds that the dissenting members had failed to comply with local bylaws, and likewise granted the local's motion for attorney's fees.

The purpose of the LMRDA's exhaustion requirement, and the manner in which the requirement is to be construed, has been described as follows:

> Statutory construction should generally be informed both by reference to the underlying policies of Congress and by common sense. Title IV, the statute to be construed, represents a balance between the public interest in fair and democratic elections, on the one hand, and the importance of minimizing government encroachment upon union autonomy, on the other. As one aspect of this equilibrium, Congress has determined that before the Secretary may intrude upon union election procedures, his authority must be called forth by a union member who has either exhausted his union remedies or invoked them without satisfaction for three months.

*Brennan v. Local Union 122, Amalgamated Clothing*, 564 F.2d 657, 660 (3d Cir. 1977). In a similar vein, the Supreme Court has indicated that "any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve." *Hodgson v. Local Union 6799, United Steelworkers of America*, 403 U.S. 333, 340, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971). With these

admonitions in mind, we turn to the facts of this case.

■ Neither party disputes that the protesters were guilty of a technical violation of the union bylaws: the bylaws require that the protesters' appeal to the local membership be received by U.S. mail within ten days from the postmarked date of the executive board's final decision, a deadline that was missed by two or three days. The question that remains is whether such a violation must be construed to defeat the dissenters' rights under the Act to file a complaint with the Secretary of Labor. In light of the Supreme Court's admonition that the exhaustion requirement must reflect the needs of the rank and file union members, we conclude that the exceedingly technical violation of the procedures for pursuing remedies afforded members in the union bylaws, did not warrant dismissal of the complaint subsequently filed by the Secretary of Labor. As the Secretary points out, the purpose of the third appeal required under the bylaws is to present the dissenters' claims to the local membership, a purpose that was in no way frustrated by the inadvertent failure of the appeal to be received within the ten-day time framework.

In reaching this conclusion, we find the Second Circuit's decision in *Hodgson v. Liquor Salesmen's Union Local No. 2 of the State of New York* to be highly persuasive. 444 F.2d 1344 (2d Cir.1971). There, the union constitution required that appeals be filed with the international union within five days following the decision of the local union. A postal strike delayed the delivery of the protester's appeal beyond the five-day limit, and the union argued that the appeal was therefore untimely. The Second Circuit disagreed:

> The argument, which sacrifices substance in favor of a hypertechnical construction of § 402(a) and of article XIV section 4 (the relevant provision of the union constitution) must be rejected. That section was predicated upon the assumption that the union's remedial procedure would afford a fair opportunity for a reasonable investigation and redress upon the filing of a meritorious complaint. (citation omitted). The technical construction invoked by the union and its incumbents would have the opposite effect. It would stifle the complaint rather than provide for an honest evaluation on the merits. Such procedural perversion of the exhaustion requirements of § 402(a) will not be permitted.

444 F.2d 1344, 1349–50 (2d Cir.1971). The Second Circuit's remarks in *United Steelworkers* apply with equal force here.

Any time requirement that is dependent upon the union's receipt of the protest instead of its postmark becomes immediately suspect in light of current delays in mail transmittals. One cannot help note that the union commenced the time frame by its postmark and ended it by requiring receipt within ten days. Under this scenario, it is conceivable the time would end before the protestants could act. Because of our holding that dismissal was unwarranted, the lower court's award of attorney's fees in the union's favor is, of course, inappropriate.

REVERSED and REMANDED.